# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| VONDELERE B. WHITE, | : | |
| Plaintiffs, | : | Case No. 3:13cv00375 |
| vs. | : | District Judge Walter Herbert Rice |
| | | Chief Magistrate Judge Sharon L. Ovington |
| CURTIS WHITE, *et al*., | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.     Introduction

Plaintiff Vondelere B. White brings this case *pro se* claiming that she has been, and remains, entitled to receive her vested interest in her ex-husband retirement benefits. She contends that the Employee Retirement Income Security Act of 1974, specifically 29 U.S.C. § 1053(a), prohibits forfeiture of her vested interest of her ex-husband's pension rights. And she contends that she is entitled to a Qualified Domestic Relations Order (QDRO) requiring the Administrator of her husband's retirement plan to calculate and pay her the vested pension benefits she is due.[2]

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2]  Under ERISA, "[a] QDRO is a type of domestic relations order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable

Plaintiff names as Defendants her ex-husband Curtis White, the Montgomery County Domestic Relations Court, and the Second District Court of Appeals of Ohio. She claims that each named defendant have violated her rights under ERISA by interfering with her right to receive her share of her ex-husband's pension benefits

The Court previously granted Plaintiff's Application to Proceed *in forma pauperis* under 28 U.S.C. §1915. This case is presently before the Court for a *sua sponte* review under 28 U.S.C. §1915(e)(2)(B).

## II.    <u>Applicable Standards</u>

A case that proceeds *in forma pauperis* is subject to *sua sponte* review and dismissal under §1915(d)(2)(B) if the Complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a named defendant who is immune from such relief.  A Complaint is not frivolous when it raises a claim with an arguable or rational basis in fact or law. *Brand v. Motley*, 526 F.3d 921, 923–24 (6th Cir.2008); *see Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir.1990).  No arguable factual basis exists if the Complaint asserts "'fantastic or delusional' allegations." *Brand,* 526 F.3d at 923 (quoting *Neitzke v. Williams,* 490 U.S. 319, 327–28, 109 S.Ct. 1827, (1989)); *see Lawler,* 898 F.2d at 1199. A Complaint has no arguable legal basis when it presents "indisputably meritless" legal theories—for example, when the defendant is immune from suit or when the plaintiff claims a violation of a legal interest which clearly does not exist.

---

with respect to a participant under a[n ERISA] plan. § 1056(d)(3)(B)(i)." *Boggs v. Boggs*, 520 U.S. 833, 846, 117 S. Ct. 1754, 1763 (1997).

*See Neitzke,* 490 U.S. at 327–28; *see also Brand,* 526 F.3d at 923.

**III.    Background**

      **A.    Plaintiff's Present Complaint**

Plaintiff and Curtis White married in 1958. Nearly 20 years later, in 1977, Curtis White went to work for General Motors. But, all was not well with Plaintiff's long-term marriage. She explains in her Complaint, "In 1979, I filed for divorce after numerous problems that continued in the marriage...." (Doc. #2, PageID at 36).

In July 1979, the Montgomery, Ohio Court of Common Pleas, Division of Domestic Relations granted Plaintiff a divorce from Curtis White. The Domestic Relations Court entered a Final Judgment and Decree of Divorce stating, "Plaintiff shall be and is hereby awarded Final Judgment and Decree of Divorce from the Defendant [Curtis White]." *Id*., #2, Exhibit 2, PageID at 43.

Plaintiff's Complaint asserts that the divorce was "improperly executed" because neither she nor Curtis White signed a consent to divorce. *Id*., PageID at 37. She argues, "in order to get a divorce at least one of the parties in the marriage has to consent to the divorce and the terms of the divorce and that consent is witnessed by the signature of that party." *Id*.

Despite the Domestic Relations Court's grant of divorce, Plaintiff and Curtis White continued to live together after July 1979. Yet, more relationship difficulties were on the horizon. Plaintiff explains, "As time went on, now 1986[,] Mr. White decides to be divorced and leaves the household with little notice, leaving myself and the now two ... remaining

3

children at home and one in college in dire straights, financially." *Id*., PageId at 36.

Plaintiff states, "Mr. White retired in 1998." (Doc. #2, PageID at 36).

As to Curtis White's retirement benefits, Plaintiff maintains that she became vested under the terms of his retirement plan due to their married status when he began working for GM in 1977 and "five years of time vesting ...." *Id*., PageID at 37. She notes, "Being married to Mr. White for the first five years of his tenure at GM, we became vested in his retirement benefit plan together." *Id*., PageID at 36.

Plaintiff claims that the July 1979 "divorce decree is a non-factor and I am still entitled to full benefit and not limited to a reduced share of that benefit ...." *Id*. She reasons that the Employee Retirement Income Security Act of 1974 (ERISA) – specifically 29 U.S.C. § 1053(a) – prohibits forfeiture of vested pension rights and, consequently, she is entitled to receive her interest in Curtis White's past and future pension benefits. She claims that Curtis White, the state Domestic Relations Court, and the Ohio Court of Appeals have deliberately blocked her from receiving her vested pension benefits. She seeks (1) $100,000 in relief from Curtis White, (2) $500,000 in "relief against the Domestic Relations Court and Court of Appeals (each) ...," and (3) injunctive relief against each named defendant to prevent future denials of her benefits. *Id*., PageID at 38.

Plaintiff additionally indicates, "I request to file my QDRO so that the Plan Administrator can determine a dollar amount of my vested share of Mr. White's retirement and start receiving the same." *Id*.

4

**B.** **Plaintiff's Past Cases**

Over the years, Plaintiff has filed many *pro se* cases against various defendants

related to her marriage to, and divorce from, Curtis White and the benefits he obtained

during his employment with GM. An Ohio Court of Appeals decision in 1991 describes her

prior divorce cases as follows:

> It appears that White obtained a non-contested divorce from Curtis
> White on July 24, 1979. It further appears that in 1987, White brought another
> divorce action against Curtis White, contending that she and Curtis White had
> entered into a common-law marriage in September, 1979. The domestic
> relations court found a failure of proof as to the existence of the common-law
> marriage, and dismissed White's second divorce action. Although no appeal
> was taken from that dismissal, White filed a motion for relief from the
> judgment, pursuant to [Ohio] Civ .R. 60(B), and, when that motion was
> denied, she appealed to this court. This court affirmed the denial of White's
> motion for relief from that judgment in a decision rendered December 8, 1989.

*Vondelere B. White v. Davis, et al.*, 12363, 1991 WL 70728 at *1 (Second Dist. Ct. App.,

Montgomery County, Ohio Apr. 29, 1991). This explanation reveals that by December 1989,

the Ohio courts did not invalidate Plaintiff's July 1979 divorce and instead considered

Plaintiff's July 1979 divorce to be valid. *See id.*

A 1992 Ohio Court of Appeals decision provided additional information about

Plaintiff's prior state cases and repeated the history of her prior unsuccessful attempt to

invalidate her July 1979 divorce due to her failure to establish her common-law marriage to

Curtis White. *White v. Detroit Diesel Allison Engine Plant Truck and Bus/GM Corp, Div*.,

1992 WL 274632 (Second Dist. Ct. App., Montgomery County, Ohio Oct. 8, 1992). Other

cases followed. *E.g., White v. Detroit Diesel Allison Engine Plant/Truck & Bus GM Corp.*

5

*Division*, 1993 WL 155674 (Second Dist. Ct. App., Montgomery County, Ohio May 10, 1993).

In May 2011, the Ohio Court of Appeals issued a decision concerning an application Plaintiff had filed in the Domestic Relations Court "for an order, and a QDRO, allocating her a portion of Mr. White's pension benefits." *White v. White*, 2011 WL 2089619 at *1 (Second Dist. Ct. App., Montgomery County, Ohio May 20, 2011). The Ohio Court of Appeals described Plaintiff's testimony during a hearing in the trial court as follows:

> Mrs. White testified that she believes she is vested in the plan and therefore entitled to a portion of [Curtis White's] pension benefits. She [testified] ... that she contacted the pension plan administrator, Fidelity Investments, and asked why she was not getting her portion. Fidelity told Mrs. White that it needed a QDRO with her name on it.

*Id*. The Ohio Court of Appeals affirmed the trial court's denial of Plaintiff's her application for a QDRO, finding in part:

> The divorce decree here is utterly silent concerning Mr. White's pension plan or retirement benefits generally. It is not at all apparent from the record that the domestic relations court inadvertently omitted to divide retirement benefits.... There is simply no evidence that the court intended to divide the retirement benefits but forgot to mention it in the decree.

*Id*.

Also in 2011, Plaintiff filed a *pro se* case in this Court arising from many of the same facts and issues she raised in state court and now, again, raises in the instant case. *Vondelere B. White v. Curtis White, et al.*, 839 F.Supp. 2d 932 (S.D. Ohio 2011) (Rice, D.J.; Newman, M.J.).  Upon *sua sponte* review of Plaintiff's Complaint, this Court concluded, in part, that it

6

"is without authority to modify Plaintiff's divorce decree or to make any findings regarding the QDRO that the Montgomery County Court of Common Pleas, Domestic Relations Division, signed and allegedly vacated."[3] *White*, 839 F.Supp. 2d at 934. The Court therefore dismissed Plaintiff's Complaint *sua sponte* under 28 U.S.C. 1915 – and without prejudice – explaining:

> If in fact the QDRO was replaced by a plan administered under the ERISA law, a matter given to the exclusive jurisdiction of the federal courts, Plaintiff's identification of a plan, plan administrator, etc., within the body of her objections does not suffice. She will be given leave to file an amended complaint and, should she decide to do so, she must clearly indicate how she is being deprived of benefits from an ERISA plan, separate and distinct from the actions of the state domestic relations court over which this Court has no power to review.

*White*, 839 F.Supp. 2d at 934. The Court provided Plaintiff with 30 days to file an amended complaint, but she did not do so.

## IV.  Discussion

Plaintiff's Complaint in the instant case does not raise fantastic or delusional facts; it is instead describes an alleged series of real-world events or circumstances. *See Brand v. Motley*, 526 F.3d 921, 923 (6th Cir. 2008); *cf. Jones v. Schmaker*, 1999 WL 1252870 at *1 (6th Cir. 1999) ("Examples of claims lacking rational facts include a prisoner's assertion that Robin Hood and his Merry Men deprived prisoners of their access to mail or that a genie granted a warden's wish to deny prisoners any access to legal texts." (citing *Lawler*, 898

---

[3] Plaintiff had alleged, in part, that state court Judge King "signed my QDRO, but counsel for Curtis White ... had my QDRO vacated. I amended it and Judge King would not allow me to refile ...." *White*, 3:11cv300, Doc. #2 at 162.

F.2d at 1198-99)).

Yet Plaintiff's Complaint fails to set forth a rational legal basis. This Court lacks jurisdiction to nullify her July 1979 divorce, to declare her marriage valid under Ohio common law, or to otherwise effect the state court rulings that affirmed the validity of her July 1979 divorce. This lack of jurisdiction remains in place now, as it was when she filed her most recent other case in this Court in 2011. *See White*, 839 F.Supp. 2d at 933 (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 703–04, 112 S.Ct. 2206 (1992)); *see also White v. White*, 2011 WL 2089619 at *1 (Second Dist. Ct. App., Montgomery County, Ohio May 20, 2011); *White*, 1992 WL 274632 at *1.

The ongoing, never-broken validity of Plaintiff's July 1979 divorce from Curtis White exposes a fatal flaw in Plaintiff's Complaint. She asserts in her Complaint, "Being married to Mr. White for the first five years of his tenure at GM, we became vested in his retirement benefit plan together." (Doc, #2, PageID at 36). But, because her July 1979 divorce was valid and ongoing, she was only married to Curtis White for approximately two out of the five years necessary for vesting in his retirement benefits. The two years being the approximate time between 1977 when Curtis White began working for GM and the date of Plaintiff's July 1979 divorce from him.

It does not advance Plaintiff's case to accept her other allegations as true. According to the Complaint, Plaintiff and Curtis White continued to live together after July 1979, and in 1981, Curtis White represented to GM that he was as married to Plaintiff. These facts,

8

however, show at most that Plaintiff and Curtis White believed themselves to be in a legally

valid common-law marriage. No Ohio court has confirmed their belief; instead, the Ohio

courts have rejected Plaintiff's effort to establish her common-law marriage to Curtis White

after her July 1979 divorce. *See White*, 1992 WL 274632 at *1; *see also White*, 1991 WL

70728 at *1. Because Plaintiff's July 1979 divorce decree has continued to be legally valid

since it was issued, the allegations of her Complaint establish that she never became vested

in Curtis White's retirement benefits. This is because (again) she was married to Curtis

White for just two years of the first five years of his tenure with GM. Without vesting, she

has no interest in Curtis White's retirement benefits, and no rational legal basis exists to

support her ERISA claim.

Plaintiff's Complaint is also time barred. "'Under ERISA, when a fiduciary breaches

an obligation or duty, the victim of the breach normally has six years in which to file suit. 29

U.S.C. § 1113(1). However, this period may be shortened to three years where the victim

had 'actual knowledge of the breach or violation.' 29 U.S.C. § 1113(2)."[4] *Wright v. Heyne*,

349 F.3d 321, 327 (6th Cir. 2003). "[T]o trigger the running of the statute of limitations

under ... § 1113(2), it is only the plaintiff's actual knowledge of the underlying conduct

giving rise to the alleged violation that is required, rather than the knowledge that the

---

[4] "The proper party defendant in an action concerning ERISA benefits is the party that controls
administration of the plan." *Garren v. John Hancock Mut. Life Ins. Co*., 114 F.3d 186, 187 (11th Cir.
1997). Although Plaintiff does not name the fiduciary as a defendant, she seeks payment of her share of
Curtis White's past and future retirement benefits. Such relief could not be granted in the absence of the
fiduciary as a party in this case, and as a result, the fiduciary is an essential party subject to joined if this
case continued. *See* Fed. R. Civ. P. 19(a)(1)(A).

underlying conduct violates ERISA." *Id*., 349 F.3d at 331. "[W]hen a fiduciary gives a

claimant clear and unequivocal repudiation of benefits that alone is adequate to commence

accrual, regardless of whether the repudiation is formal or not." *Morrison v. Marsh &*

*McLennan Companies, Inc.*, 439 F.3d 295, 302 (6th Cir. 2006) (citations omitted).

> The Ohio Court of Appeals recently explained:

> > Although Mrs. White does not assert this, we recognize the possibility
> > that she might claim to have been unaware of the [July 1979 divorce] decree's
> > effect until Mr. White actually started drawing benefits. Mr. White began
> > receiving pension benefits in 1998. Mrs. White admitted at oral argument [in
> > state court] that she knew then that he had begun receiving them.

*White*, 2011WL at 2089619 at *2. Given Plaintiff's admission that she knew in 1998 that

Curtis White had actually started drawing his retirement benefits, *id*., Plaintiff had actual

knowledge that the fiduciary was paying all of Curtis White's retirement benefits to him and

none to her. Given her actual knowledge of this in 1998, ERISA's statute of limitations

began to run in 1998 and continued to run for more than ten years until she filed the present

case.  As a result, her present Complaint is barred by ERISA's three- or six-year statute of

limitations, regardless of which applies. *See Stites v. Ford Motor Co.*, 2008 WL 3852250 at

*9-*10 (E.D. Mich., Aug. 18, 2008); *see also Leemis v. Medical Services Research Group,*

*Inc*., 75 Fed. Appx. 986 (6th Cir. 2003) (plaintiff's ERISA-interference claim barred by one-

year statute of limitations).

> Accordingly, Plaintiff's Complaint is subject to dismissal under 28 U.S.C.

§1915(e)(2)(B).

10

**IT IS THEREFORE RECOMMENDED THAT:**

1.    Plaintiff's Complaint be DISMISSED;

2.    The Court certify pursuant to 28 U.S.C. §1915(a)(3) that for the foregoing reasons an appeal of an Order adopting this Report and Recommendations would not be taken in good faith, and consequently, leave for Plaintiff to appeal *in forma pauperis* should be denied; and

3.    The case be terminated on the docket of this Court.


January 3, 2014


       s/Sharon L. Ovington     
Sharon L. Ovington
Chief United States Magistrate Judge

11

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).